IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**VICKIE LYNN PIPER,**

**Plaintiff,**

vs.                                                    **CASE NO. 2:15-cv-12555**

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security,**

**Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 12) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 13).

### Background

Claimant Vickie Lynn Piper protectively filed applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income benefits on February 8, 2012 (Tr. at 212-226), alleging disability beginning on February 21, 2012 (Tr. at 214, 217). Her claims were denied initially on May 16, 2012 (Tr. at 127-148) and again upon reconsideration on June 7, 2012 (Tr. at 150-163). Claimant filed a Request for Hearing on June 29, 2012 (Tr. at 164-165). On November 14, 2013, an administrative video hearing was scheduled and held with Claimant appearing from Parkersburg, West Virginia, before an Administrative Law Judge (ALJ) who presided from Charleston, West Virginia (Tr. at 54-93).

At the beginning of the hearing, counsel for Claimant notified the ALJ that there were some outstanding records from Charleston Area Medical Center (CAMC) which Claimant had

previously requested (Tr. at 59).  There was a delay in the transfer of the records, to no fault of

Claimant.  Counsel for Claimant stated that the documents should arrive "any day now." (*Id.*) The

outstanding records pertained to time beginning 2001 through 2013. (*Id.*)  The ALJ stated that he

would keep the record open for the outstanding records until December 2, 2013 (Tr. at 60).  On

November 27, 2013, Claimant notified the ALJ that the additional records received from CAMC

reflected treatment received prior to Claimant's alleged onset date of disability, therefore, the

records would not be submitted (Tr. at 305).  Claimant's letter to the ALJ stated that "At this time

I have no additional evidence to submit for consideration in this claim…" (*Id.*)

On February 13, 2014, the ALJ entered a decision finding that Claimant had not been under

a disability at any time since February 21, 2012, her alleged onset date (Tr. at 37-52). In the

decision, the ALJ stated the following:

> The record was held open until December 2, 2013, to allow
> claimant's counsel time to submit additional evidence from
> Charleston Area Medical Center (CAMC).  A letter from claimant's
> counsel indicated there was no new material evidence from CAMC
> (Exhibit 14E). Furthermore, the undersigned notes that the new
> exhibit[1] submitted by the claimant's attorney (Exhibit 13F) does not
> change the residual functional capacity and thus, does not affect the
> vocational expert's testimony or the decision.  Therefore, the record
> is complete and ready for decision. (Tr. at 40).

On April 8, 2014, Claimant requested review by the Appeals Council of the ALJ's

unfavorable decision (Tr. at 53). On May 19, 2015, Claimant submitted additional medical

records to the Appeals Council (Tr. at 10).  The additional medical records were from

Camden Clark Diabetes & Endocrine Center between February 26, 2015, through March 26,

---

[1]  The ALJ does not state when Exhibit 13F was submitted by Claimant.  The only indicator of the submission timeframe is the footer on the pages of Exhibit 13F which states "Report Generated: 10/22/2013" (Tr. at 620-636).

2015. Also, on Mary 19, 2015, Claimant submitted additional medical records from Marietta Memorial Hospital dated March 10, 2015 (Tr. at 32-34).

On June 22, 2015, an Order of Appeals Council (AC) stated that "The Appeals Council has received additional evidence, which it is making part of the record" (Tr. at 7). The Appeals Council entered medical records from Camden Clark Diabetes & Endocrine Center covering the periods between December 30, 2013, through January 11, 2014, as Exhibit 14F (Tr. at 6). In a Notice of Appeals Council Action dated June 22, 2015, the Appeals Council denied Claimant's Request for Review (Tr. at 2-8). The Appeals Council stated, in part, the following:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We considered whether the Administrative Law Judge's action, findings or conclusion is contrary to the weight of evidence of record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.
>
> We also looked at the medical records from Camden Clark Diabetes and Endocrine Center covering the periods from February 26, 2015 through March 16, 2015 (21 pages) and medical records from the Marietta Memorial Hospital dated March 10, 2015 (5 pages). The Administrative Law Judge decided your case through February 13, 2014. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before February 13, 2014.
>
> If you want us to consider whether you were disabled after February 13, 2014, you need to apply again. The new information you submitted is available in your electronic filed for you to use in your new claim. (Tr. at 2-3).

Subsequently, on October 2, 2015, the Appeals Council (AC) notified Claimant in a letter that the AC "reviewed the additional evidence and concluded that no change in the prior action was warranted" (Tr. at 1). Thereafter, Claimant filed a complaint with this Court objecting to

3

the final decision of the Commissioner and seeking remand and reversal of the Administrative

Law Judge's decision.

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a

disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined

as the "inability to engage in any substantial gainful activity by reason of any medically

determinable impairment which can be expected to last for a continuous period of not less than 12

months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of

disability claims. 20 C.F.R. § 404.1520 (2015). If an individual is found "not disabled" at any

step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is

whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If

the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.*

§ 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment

meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative

Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded

benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the

performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant

establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The

burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir.

1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms

of substantial gainful activity, considering claimant's remaining physical and mental capacities and

claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2015). The

4

Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date of February 21, 2012, and meets the insured status requirements of the Social Security Act through December 31, 2015 (Tr. at 42). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairment of cervical spondylosis, cervicalgia and diabetes mellitus, type II (Tr. at 43). At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 44). The ALJ then found that Claimant has a residual functional capacity to perform a light work except she may occasionally balance, stoop, kneel, crouch, crawl and climb ramps, stairs, ladders, ropes and scaffolds. She must avoid concentrated exposure to fumes, odors, dust, gas, poor ventilation and hazardous conditions such as unprotected heights and dangerous moving machinery. (*Id.*) The ALJ held that Claimant is capable of performing past relevant work as a cashier. The ALJ held that "This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity" (Tr. at 48). On this basis, benefits were denied. (*Id.*)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to
> support a particular conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less than a
> preponderance. If there is evidence to justify a refusal to direct a
> verdict were the case before a jury, then there is 'substantial
> evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving

conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless,

the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize

the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v.*

*Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not

supported by substantial evidence.

## Claimant's Background

Claimant alleges she became disabled on February 21, 2012, due to neck problems,

degenerative disc disease, status-post surgery, degenerative arthritis, diabetes, fibromyalgia, high

cholesterol and low magnesium levels (Tr. at 340). Claimant was born on April 13, 1958. She

has a high school education (Tr. at 245). Claimant's employment history included work as a fast

food worker, a cashier/stocker and in food preparation (Tr. at 245, 304).

## Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Administrative Law Judge's (ALJ) finding that Claimant was not

disabled at step four of the sequential process is not supported by substantial evidence (ECF No.

12). Claimant argues that the ALJ's determination at step four that Claimant could return to her

past relevant work is not supported by substantial evidence because the ALJ failed to perform the

requisite analyses under Social Security Regulations 82-61 and 82-62.  Also, Claimant asserts that

the ALJ failed to perform adequate development and analysis of Claimant's past relevant work as

a fast food cashier (Tr. at 48).   Defendant asserts that substantial evidence supports the ALJ's

conclusion at step four in the sequential evaluation process (ECF No. 13).

<u>Medical Record</u>

The Court has reviewed all evidence of record, including the medical evidence of record,

and will discuss it further below as necessary.

<u>Five-Step Sequential Evaluation</u>

In a recent decision by the United States Court of Appeals for the Fourth Circuit, *Monroe*

*v. Colvin*[2], the court provided the following discussion regarding the ALJ's RFC assessment within

the five-step sequential evaluation in making a disability determination:

> In determining a claimant's RFC, the ALJ must consider "all
> of [the claimant's] medically determinable impairments of which
> [the ALJ is] aware, including those not labeled as severe at step two.
> *Mascio*, 780 F. 3d at 635 (quoting C.F.R. § 416.945(a)(2)).  He also
> must "consider all [the claimant's] symptoms, including pain, and
> the extent to which [his] symptoms can reasonably be accepted as
> consistent with the objective medical evidence and other evidence."
> 20 C.F.R. § 404.1529(a); see 20 C.F.R. § 416.929(a).  "When the
> medical signs or laboratory findings show that [the claimant] has a
> medically determinable impairment that could reasonably be
> expected to produce [his] symptoms, such as pain, [the ALJ] must
> then evaluate the intensity and persistence of [the claimant's]
> symptoms so that [the ALJ] can determine how [his] symptoms limit
> [his] capacity for work." 20 C.F.R. § 404.1529(c)(1), 416.929(c)(1).
> Once the ALJ has determined the claimant's RFC, the ALJ
> then proceeds to step four, where the burden rests with the claimant
> to show that he is not able to perform his past work. *See Bowen v.
> Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Mascio*, 780 F.3d at 635.  If

---

[2] *Monroe v. Colvin*, No. 15-1098 (4th Cir. June 16, 2016).

he successfully makes that showing, the process proceeds to step five. *See Mascio*, 780 F.3d at 635.

"At step five, the burden shifts to the Commissioner to prove by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education and work experience." *Id.* (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* If the Commissioner satisfies that burden, then the claimant is found to be not disabled and his benefits application is denied. *See id.*

## Discussion

The ALJ's decision states that new material evidence from Charleston Area Medical Center was submitted by Claimant's counsel and entered to the record as Exhibit 13F (Tr. at 40). The ALJ stated that the new exhibit does not change the residual functional capacity. In step-three of the sequential evaluation, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments (Tr. at 44).

The ALJ's discussion as to why Claimant's diabetes mellitus, type II, did not equal the severity of Listing 9.00 Endocrine Disorders is as follows:

The diabetes mellitus is evaluated under newly revised 9.00 Endocrine Disorders. While diabetes mellitus type 1 and type 2 are chronic disorders that can have serious disabling complications that can meet the durational requirement, type 2 diabetes mellitus generally requires lifelong changes, such as medication, increased exercise, and dietary modification. While both types are usually controlled, some persons do not achieve good control for a variety of reasons, including but not limited to hypoglycemia unawareness, other disorders that can affect blood glucose levels, inability to manage diabetes mellitus due to a mental disorder, or inadequate treatment. Further, diabetes mellitus and unstable blood glucose levels can produce acute or long-term complication, which can have

> various effects in other body systems.   The newly revised 9.00
> Endocrine Disorder indicates these complications would be
> evaluated under the affected body systems.   However, the
> undersigned notes the record as a whole fails to reveal any evidence
> of diabetic complications. (Tr. at 44).

The ALJ held that "after careful consideration of the entire record," Claimant has the RFC
to perform light work except she may occasionally balance, stoop, kneel, crouch, crawl and climb
ramps, stairs, ladders, ropes and scaffolds.   She must avoid concentrated exposure to fumes,
odors, dust, gas, poor ventilation and hazardous conditions such as unprotected heights and
dangerous moving machinery (Tr. at 44).   The ALJ stated in making his RFC finding he
considered "all symptoms and the extent to which these symptoms can reasonably be accepted
as consistent with the objective medical evidence and other evidence" and the "opinion
evidence."

The ALJ discussed the credibility of Claimant's symptoms, in part, as follows:

> The claimant acknowledged she did not take medication for diabetes,
> because she could not afford them.   She said when she received a
> medical card she was able to resume medications for diabetes.   She
> indicated she is having difficulty getting her prescriptions filled.   She
> testified that her blood sugar goes up and down and her feet feel like
> hot needles going into the bottom of her feet, and is worsened by
> standing and walking.
>
> After careful consideration of the evidence, the undersigned finds
> that the claimant's medically determinable impairments could
> reasonably be expected to cause the alleged symptoms; however, the
> claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not entirely credible for the
> reasons explained in this decision.
>
> …
>
> Although the claimant has received various forms of treatment for
> the allegedly disabling symptoms, which would normally weigh
> somewhat in the claimant's favor, the record also reveals that the
> treatment has been generally successful in controlling those
> symptoms.
>
> …

In regards to the diabetes, the record reveals that the treatment has been generally successful in controlling those symptoms.  In April 2013, the claimant reported she was "doing good" with diabetes (Exhibit 7F, p. 26).  In June 2013, the claimant reported she was "doing good" with diabetes (Exhibit 7F, p. 26).  In June 2013, she indicated she was doing well (Exhibit 7F. p. 8) and in July 2013, physical examination was normal (Exhibit 7F, p.3).  Records from Milargros Lopez-Velex, M.D., show the diabetic neuropathy was mild (Exhibit 12F, p. 6).  Review of systems in October 2013 revealed no complications other than musculoskeletal symptoms (Exhibit 13F, p. 3).  These treatment notes reflect essentially normal or benign physical findings and suggest the claimant overestimates her symptoms.  The claimant has not alleged any side effects from the use of medications (Exhibit 3E).

…

In sum, the claimant's residual functional capacity as determined in this decision is fully supported when considering the claimant's testimony and written statements in connection with the clinical facts, medical findings, and opinions of treating, examining and non-examining physicians. (Tr. at 45-46).

<u>Residual Functional Capacity</u>

Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record, including the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication. *Id.* at *5. The Ruling requires that the ALJ conduct a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3.  This function-by-function analysis enables the ALJ to determine whether a claimant is capable of performing past relevant work, the appropriate exertional level for the claimant, and whether the claimant is "capable of doing the full range of work contemplated by the exertional level." *Id.*

Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. § 404.1545(a) (2014).  This assessment of your remaining capacity for work is not a decision on whether you

are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s). *Id.* In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairment. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ also must "explain how any material inconsistencies or ambiguities, in the evidence in the case record were considered and resolved." *Id.*

<u>Function-By-Function Analysis</u>

Social Security Ruling 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that a RFC may "be expressed in terms of the exertional levels of work." *Id.* The Court in *Mascio* noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. *Id.* The Fourth Circuit further noted that a *per se* rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.*

In *Monroe*, the claimant alleged episodes of loss of consciousness and fatigue. Monroe

testified that he would lose consciousness about two or three times per day and would need to take several breaks during the day because of fatigue. The ALJ found that Monroe had the severe impairments of sleep apnea and narcolepsy and concluded that Monroe's impairments could reasonably be expected to cause his claimed symptom.  However, the Fourth Circuit found that the ALJ "never made specific findings about whether Monroe's apnea or narcolepsy would cause him to experience episodes of loss of consciousness or fatigue necessitating breaks in work and if so, how often these events would occur." See *Monroe*, citing SSR 96-8p, 61 Fed. Reg. at 34, 478 ("in all cases in which symptoms, such as pain, are alleged, the RFC assessment must … [i]nclude a resolution of any inconsistencies in the evidence as a whole" and "[s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work"). The ALJ concluded that Monroe was capable of light work, with exceptions the ALJ identified, and that the claimant's alleged symptoms were not credible to the extent they are inconsistent with the RFC the ALJ identified.

The Fourth Circuit stated in the *Monroe* opinion:

> We have not adopted a rule of per se reversal for errors in expressing the RFC before analyzing the claimant's limitation function by function.  *See Mascio*, 780 F.3d at 636.  However, we have held that "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.* (alterations and internal quotation marks omitted).  We conclude that this is just such a case.

> Because the ALJ never determined the extent to which Monroe actually experienced episodes of loss of consciousness and extreme fatigue, we cannot determine whether the hypothetical questions posed to the VE, [vocational expert], included all of Monroe's functional limitations, as they needed to do in order to be useful.  *See Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions

which fairly set out all of claimant's impairments." (alteration and internal quotation marks omitted)). On remand, the ALJ will need to consider Monroe's narcolepsy and apnea, and all of his other physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect his ability to work. Only once the ALJ has conducted such an analysis will he be able to move on to steps four and five, concerning Monroe's ability to perform past work and his ability to perform other work that exists in significant numbers in the national economy. *See Mascio*, 780 F.3d at 636.

The new evidence that Claimant submitted after the hearing, but before the ALJ had made his determination, was entered into the record as Exhibit 13F. These medical records consist of "encounter summaries" by examining clinicians. On September 18, 2013, Claimant's chief complaint was her medications (Tr. at 635). On October 14, 2013, Claimant's chief complaint was regarding her insulin order. Also, Claimant wanted to discuss her labs and medical refills (Tr. at 620, 622). In the encounter summaries, Claimant's "current problems" were listed as follows:

> Diabetes mellitus, hyperlipidemia, hypertension, thoracic spondylolisthesis, noncompliance with medical treatment, diabetes mellitus type 2 with complication uncontrolled, anemia, cervicalgia, gingivitis, anxiety disorder NOS, depression and esophageal reflux (Tr. at 620-621).

In the present matter, the ALJ's RFC assessment did not resolve all inconsistencies in the evidence as a whole as required under SSR 96-8p. Although the ALJ found that the record reflects that Claimant's diabetes was successfully controlled by medical treatment and that Claimant "has not alleged any side effects from the use of medications," the encounter summaries submitted after the hearing and entered into the record by the ALJ as Exhibit 13F reflect that Claimant suffered in September and October of 2013, from diabetes mellitus type 2 with complication uncontrolled (Tr. at 621). The encounter summary dated October 7, 2013, contains progress notes reflecting Claimant's diabetes mellitus is "poorly controlled" (Tr. at 629). Also, the labs reflected

in the encounter summary report that Claimant's Hemoglobin A1C was high at a value of 7.3 (Tr. at 630).  The comments regarding hemoglobin value provides that the value range of 5.7 to 6.4 increases a person's risk for diabetes. (*Id.*)

Social Security Ruling 96-8p explains that the RFC "'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe* (citing *Mascio* (quoting SSR 96-8p, 61 Fed. Reg. at 34, 478; see also *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

The ALJ in the present case failed to "build an accurate and logical bridge from the evidence to his conclusion" that Claimant "is not fully credible" (Tr. at 20).  The ALJ did not explain how he reached the conclusion that Claimant's diabetes mellitus has been successfully controlled by treatment when the encounter summaries from CAMC state that Claimant was experiencing diabetes mellitus II uncontrolled complications.  Additionally, meaningful review cannot be conducted without the ALJ's consideration of the entire record when forming his RFC assessment of Claimant.  The ALJ's determination that Claimant's diabetes mellitus was successfully controlled by treatment when encounter summaries from CAMC reflect otherwise fails to provide a narrative explaining how the inconsistencies and ambiguities, in the evidence in the case record were considered and resolved.

Therefore, the undersigned respectfully recommends that the District Judge find that the ALJ's opinion is not supported by substantial evidence and lacks the analysis and narrative discussion that would allow for meaningful review. This Court recommends that the District Judge find that a function-by-function analysis pursuant to the holding in *Mascio* cannot be applied correctly when relying upon an RFC that does not consider all of the relevant evidence in the case. This Court makes no recommendation as to Claimant's remaining arguments regarding the ALJ's failure to perform the requisite analyses under Social Security Regulations 82-61 and 82-62[3] and the ALJ's determination that Claimant can perform her past relevant work. These issues may be addressed on remand.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Plaintiff's Memorandum in Support of Motion for Judgment on the Pleadings (ECF No. 12) to the extent Plaintiff seeks remand pursuant to sentence four of 42 U.S.C. § 405(g), **DENY** the Defendant's Motion for Judgment on the Pleadings (ECF No. 13), **REVERSE** the final decision of the Commissioner, and **REMAND** this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within

---

[3]  Both SSR 82-61 and SSR 82-62 provide guidance to an ALJ for determining whether the claimant is able to perform her past relevant work. A claimant's RFC is essential in determining whether a claimant can perform the physical and mental demands of the past job/occupation.  As the ALJ's RFC in the present matter is not supported by substantial evidence, the analysis under SSR 82-61 and SSR 82-62 cannot be performed.

which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter:  July 5, 2016

Dwane L. Tinsley
United States Magistrate Judge